## County Board of Education of Christian County, et al. v. Board Trustees Hopkinsville Public Schools.

(Decided June 10, 1913.)

### Appeal from Christian Circuit Court.

1. School Board—Contract With—Indebtedness—Constitutional Provision.—A contract by which a county board agreed to pay $3,000 annually for five years, creates an indebtedness of $15,000, but is not in violation of section 157 of the Constitution, unless this sum when added to the existing indebtedness, exceeds the income or revenue provided for the year.
2. School Board—Contract With—Discretion—Review.—A county board may contract with the city board for the free tuition of the county pupils in the city high school, and in making such contracts the boards are given a discretion which will not be reviewed by the courts when fairly exercised.
3. School Board—High School Not Necessarily Under County Board—Contracts.—It is not necessary under the statute that the high school shall be under the control of the county board. How it shall be governed is a matter to be settled by contract between the two boards under the statute, and a contract made while the boards had a school in operation will be considered as referring to the kind of school the parties than had.

BREATHITT & BREATHITT for appellants.

W. T. FOWLER and HUNTER WOOD & SON for appellee.

Opinion of the Court by Chief Justice Hobson—Affirming.

The act of March 24, 1908, among other things provides: ·

"Within two years after the passage and approval of this act, there shall be established by the county board of education of each county one or more county high schools: Provided, there is not already existing in the county a high school of the first class; if such high school already exists, and if the county board may be able to make such an arrangement with the trustees or board of education of said high school as will furnish to the pupils completing the rural school course free tuition in said high school, then said high school may be considered as meeting the purpose of this law without the establishment by the board of another high school. The county board of education in the various counties shall have full power and authority to unite with the governing authorities of any city or town in their respective counties for the purpose of establishing a high school for the joint use of the city or town and such county, and to unite with such authorities for the purpose of maintaining such high school if one be already in existence. For this purpose said county boards are hereby given full power and authority to make such contracts as they may deem necessary or proper for the establishment and maintenance of such high school for the joint use of the county and such city or town. Said contract shall be in writing and shall contain full and complete stipulations as to employment and compensation of teachers, courses of study, payment of the expenses of the school and the control and discipline of the pupils. The first county high school to be established in the county shall be located at the county seat, provided there is not already existing in the county seat a high school of the required grade. The county high schools of this Commonwealth shall be of the first, second and third classes. A first class high school shall maintain a four years course of study, which shall be prepared by the State Board of Education. Such course of study may provide for instruction in manual training, domestic science and elementary agriculture. High schools of the second class shall maintain a course of three years, identical with the first three years of the first class high school. High schools of the third class shall maintain a course of two years, identical

with the first two years of the first class high school." Ky. Stat., Sec. 4426a, Sub-sec. 8.

After the act took effect the city of Hopkinsville was maintaining a high school, and negotiations began between the board of trustees of the Hopkinsville public schools and the county board of education looking to the establishment of a high school to be controlled by the two boards jointly and the education of the county pupils in the city high school until the buildings required for the projected joint school could be erected. The negotiations culminated on April 4, 1910, in a written contract between the two boards by which it was provided that the county board should buy a lot of ground costing $5,000 and adjoining the lot bought by the city for $9,500; that the two boards by proper conveyance one to the other should become joint owners of the lots; that upon them thus owned the two boards would erect a high school building, the building to cost in round numbers $70,000, the equipment $10,000 and the foundation for the building $4,000, and that the anual expenses incurred in the conduct of the school were to be borne by the county and city board according to the number of pupils attending the high school from the county and city. The county board bought the lot for $5,000 and paid for it. An architect was employed who drew plans for the building, and his plans were accepted by the two boards. The foundation was built and paid for, each board paying one-half. After this had been done the county board finding itself unable to raise its half of the cost of the building and equipment amounting to $40,000 by the time the money would be due, a new contract was entered into between the two boards by which the stipulations of the original contract as to the payment by the county board of $40,000 for the erection and equipment of the building were eliminated, and the following in substance were substituted therefor: The county board should pay to the city board the sum of $8,000 a year payable annually as tuition in addition to the cost of maintenance payable on January 1 of each year for a period of five years, and when these payments were made the city board should convey to the county board an undivided half interest in the building and equipment; the city should proceed to erect a building in accordance with the plans and specifications at a cost not exceeding $70,000 in excess of the foundation, the equipment to be provided and purchased by a high school council selected by the two boards and

not to cost exceeding $10,000. Under this agreement,
the county board made its first payment of $8,000, the
city board was proceeding with the erection of the build-
ing and the county pupils were being taught in the city
high school, when doubts arose as to the validity of the
contract on the part of the county board because it created
an indebtedness exceeding the income and revenue pro-
vided for the year and was unauthorized under section
157 of the Constitution. After much deliberation and
consultation between the two boards, a new contract was
made on February 14, 1911, by which the original contract
as modified was annulled and abrogated; and it was pro-
vided that the city board should complete the school build-
ing and maintain a first class high school in the city of
Hopkinsville; that county pupils eligible for admission
should have the right to attend the high school free of
tuition; that the county board should pay for their in-
struction the sum of $3000 annually for a period of five
years. The county board conveyed to the city board its
undivided half interest in the lots on which the building
was to be erected, and also gave up the $2,000 which it
had paid for the foundation. The city board returned to
the county board $6,000 of the $8,000 which had been
paid retaining $2,000 for the tuition of the county pupils
in the high school for that year. It was further agreed
in the contract that should the county board decide to
purchase or become a joint owner in the high school
property at any time at an agreed valuation, it should
have a credit on such agreed valuation for the sum of
$7,000 this being the amount relinquished by it in the
dissolution settlement. When the first installment of
$3,000 became due under the new contract of February
14, 1911, the superintendent of schools for the county re-
fused to pay the amount and the city instituted this suit
to compel her by mandamus to pay it. In defense of the
suit, she insisted that the contract of February 14, 1911,
created an indebtedness exceeding the income and reve-
nue provided for the year, and was void under section
157 of the Constitution; that the county board had been
overreached by the city board in making the contract, and
that the contract was not warranted by the statute or
within the power of the county board. The circuit court
on the hearing of the case held that $15,000, the amount
of the indebtedness created by the contract of February
14, 1911, was not in excess of the revenue provided for
the year; that the contract was fairly and intelligently

made, and that it was one which the county board had authority under the statute to make. The defendant appeals.

1. As the contract provided for an annual payment of $3,000 for five years, it must be regarded as creating an indebtedness of $15,000. (O'Brien v. City of Owensboro, 113 Ky., 680.) We give some weight to the finding of the circuit court on questions of fact ,and we do not disturb his finding of fact on doubtful evidence. The weight of the evidence shows that the total revenue provided for the year was about $32,000, and that the $15,000 of indebtedness when added to the previous indebtedness made a total indebtedness of something less than $30,000. We conclude from a careful investigation of the record that the above are the facts and that the contract did not create an indebtedness which when added to the existing indebtedness exceeded the revenue provided for the year. (Lawrence Co. v. Lawrence Fiscal Court, 130 Ky., 590; Hopkins Co. v. St. Bernard Coal Co., 114 Ky., 153.)

2. The evidence wholly fails to show that the county board was overreached in the settlement. The proof shows that the settlement was made after days of discussion and upon the advice of counsel. The county board was required under the act to establish a county high school, and it decided to establish the high school at Hopkinsville. By the agreement in question it secured the high school. The city board had gone into the arrangement with the county board for the establishment of a joint high school at a joint expense. Larger school buildings and larger equipment were necessary for the joint school than for the city school. When the parties had in part performed their agreement they came upon the stumbling block that the agreement was beyond the power of the county board under section 157 of the Constitution. What was to be done? The county board was still under obligation to establish a high school, and an unexpected burden was about to be placed upon the city school. The arrangement which the parties made was both fair and reasonable. There were then in the city high school fifty county pupils and these at the usual charge of $40 would cost the county $2,000, so the city retained $2,000 of the $8,000 that had been paid it. The parties could not know for certain how many county pupils would be in the high school for the ensuing years, and so they finally agreed on a lumping estimate of $3,000 a year, it being natural and to be expected that the

number of pupils from the county would gradually increase as the new system was put in operation, and there were more county pupils eligible for the high school. When the county pupils exceed seventy-five, the city will be the loser by the lumping contract, and when they fall under seventy-five the county will be the loser. But the contract was made by people who knew the local conditions, and it is as fair to one municipality as to the other. The only thing the county gave up in the settlement was its one-half interest in the lots for which it had paid $5,000 and the $2,000 it had paid on the foundation, and this $7,000 it is to be credited by at any time when it decides to buy the property or a half interest in it at a fair valuation. The county could not reasonably expect the city to furnish it high school facilities including the larger building and larger equipment without some inducement, and we cannot say that the county board abused a sound discretion in making this arrangement especially in view of the fact that it has a right to purchase the property or half of it, whenever it gets able to do so. In other words It would appear from the record that the county board being powerless to establish a high school, as it had originally contemplated under the contract of April 4, 1910, made this temporary arrangement by which it secures a high school for the county pupils for five years, and obtains an opportunity in the meantime to get in a position to buy half the property and carry out that contract.

3. By the statute, if a high school already existed in the county, and if the county board is able to make such an arrangement with the trustees as will furnish to the pupils completing the rural school course free tuition in the high school, then such school may be considered as meeting the purposes of the act. The county board is given full power and authority to unite with the governing authorities of any city or town in their respective counties for the purpose of establishing a high school for the joint use of the city or town and the county, and to unite with such authorities for the purpose of maintaining a high school if one be already in existence. For this purpose the county boards are given full power and authority to make such contracts as they may deem necessary or proper for the establishment and maintenance of such high schools for the joint use of the county and such city or town. The statute was plainly designed to give the county and city boards a wide discretion upon

the ground that a joint high school with its larger means would furnish to all the pupils better facilities than a smaller school supported by smaller means. What is best to be done is a matter depending upon local conditions and many circumstances, and therefore the statute clothed the board with full power and authority to make such contracts as they deemed proper or necessary. We do not see that the board exceeded its authority or that it did not exercise a fair and reasonable judgment.

It is insisted however that the contract made here does not contain full and complete stipulations as to employment and compensation of teachers, courses of study, payment of the expenses of the school or the control and discipline of the pupils, and that it is silent as to whether the high school shall be of the first, second or third class. But these matters were substantially set out in the contract of April 4, 1910; the parties had in fact been running the high school under that contract from the beginning of the term and were so running it on February 14, 1911, when the new contract was made. Plainly the new contract refers to the high school that the parties were then running, and contemplates that the school shall be run substantially in the same manner for the five years. It is not necessary under the statute that the high school where a contract is made with the city authorities, shall be under the control of the county board or under the joint control of both boards. How the high school shall be governed is a matter to be settled by contract between the two boards under the statute, and in the case at bar it is agreed that the city board is to run the high school When the county board is given full power and authority to make such contracts as they deem necessary, it cannot be said that they may not contract with the city authorities for the use of a city school which is under the control of the city authorities.

On the whole case we see no substantial error to the prejudice of appellants.

Judgment affirmed.