### Munfordville Mercantile Company v. Board of Trustees District No. 39, et al.

(Decided October 21, 1913).

#### Appeal from Hart Circuit Court.

1.   Schools and School Districts—Trustees of Graded School and County Board of Education May Maintain a Joint School.—Under subsection 8 of section 4426-a of the Kentucky Statutes, the board of trustees of a graded school and the county board of education are authorized to enter into a contract whereby a school building may be jointly erected and a joint school conducted in the

building under the management of the board of trustees and the board of education.

2. Schools and School Districts—Bond Issue to Provide for Building to be Used as a Graded School and County High School.—The county board of education and the trustees of a graded school district may enter into a contract for the erection of a school building to be paid for in part by the board of education and in part by bonds issued by the graded school district, under section 4481 of the Kentucky Statutes.

3. Schools and School Districts—Hours of Election on Question of Bond Issue to Erect Buildings for Graded School.—Section 4481 of the statute leaves it to the board of trustees of the graded school district to fix the time, place and hours of the election, and when they have fixed the hours of election, it should be held within these hours. In this case the hours of election fixed were from one until four o'clock but the polls were kept open until five o'clock. But the unauthorized act of election officers in keeping the polls open later than the order specified did not affect the result of the election, as it does not appear· that any votes were cast after four o'clock.

4. Schools and School Districts—Graded School Election to Erect Building—Viva Voce Voting.—Section 4481 of the statute provides that at elections ordered by boards of trustees of graded school districts for the purpose of erecting buildings that voting shall be viva voce and not by secret ballot.

5. Schools and School Districts—Graded School Election—White and Colored Voters.—At an election held for the purpose of erecting buildings for a white graded school, colored voters are not entitled to vote. Their property in the district is not subject to taxation for the purpose of erecting the building or maintaining the school, nor can colored children attend the school.

McCANDLESS & LARIMORE for appellant.

WATKINS & CARDEN for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant company, a taxpayer in the appellee district, brought this suit to enjoin the issual of bonds by the appellee for the purpose of raising money to erect a new school building. The bonds were authorized to be issued by a vote of the people taken under section 4464 of the Kentucky Statutes. The right of the board to issue the bonds is assailed upon four grounds.

Preliminary to stating them it should be said that in 1908 the graded school district was established. In 1910 a contract was entered into between the board of

trustees and the board of education of Hart County by which it was provided that the board of education should maintain a high school in the graded school building. The graded school and the county high school to be conducted jointly. The contract also contained numerous details relating to the management of the school, including the employment of teachers and their payment. It also provided that whenever the board of trustees desired to erect a new school building, the board of education would contribute a sum specified in the contract. Under this arrangement the school was conducted jointly in a manner highly satisfactory to everybody interested in its welfare.

One of the grounds upon which the bond issual is attacked is that the board of trustees had no authority to enter into a contract with the board of education by which the school building should be used both as a graded school building and a high school building. This objection is based on the theory that when money is raised by taxation for the erection of a graded school building, the building must be devoted exclusively to the use of the graded school, and, therefore, no arrangement or contract could be entered into with the county board of education, however beneficial it might be to the school, by which the county board of education would have a voice in the management of the school or an interest in the school building.

It is provided in subsection 8 of section 4426a of the Statute that ''The county board of education in the various counties shall have full power and authority to unite with the governing authorities of any city or town in their respective counties for the purpose of establishing a high school for the joint use of the city or town and such county, and to unite with such authorities for the purpose of maintaining such high school if one be already in existence. For this purpose said county board are hereby given full power and authority to make such contracts as they may deem necessary or proper for the establishment and maintenance of such high school for the joint use of the county and such city or town. Said contract shall be in writing and shall contain full and complete stipulations as to employment and compensation of teachers, courses of study, payment of the expenses of the school and the control and discipline of the pupils.''

The graded school here in question was established in the town of Munfordville, the county seat of Hart County, and under this statute we think the board of education and the board of trustees had authority to enter into the contract referred to. Under this contract the board of education contributes to the erection of the building a sum sufficient, when added to that raised by the board of trustees under the bond issue, to erect buildings adequate and suitable for both the graded school and the high school. It is conceded that this arrangement between these two school bodies will enable both of them acting jointly to accomplish better results than either of them could acting independent of the other. It seems to be agreed that neither by itself could raise a sufficient sum to erect and equip a suitable school building, but both of them acting in concert can do this and also operate a good school.

The board of trustees and the board of education have assumed the duty of providing educational facilities for the children in their district and county. Both are public bodies answerable to the people for their conduct, and when they can accomplish better results by co-operating, as in this case, than they could acting separately, it seems manifest that they should be allowed to do so. Indeed the statute quoted contemplated and provided for conditions such as appear to exist in this case, and this statute should be given a liberal construction to enable the parties charged with its execution to carry out the purpose of its enactment. Arrangements such as were made between the board of trustees and the board of education should be encouraged, so that both working together may accomplish more good for the cause of education than they could do acting separately. County Board of Education v. Board of Trustees, 154 Ky., 309.

The order calling for the election specified that the polls should be open between the hours of one and four o'clock in the afternoon, but it appears that they were kept open from one o'clock until five o'clock. Under some circumstances this would be a fatal objection to the election, but we do not think it was material under the facts of this case. Section 4481 of the Statute, authorizing boards of trustees to order an election for the purpose of ascertaining the will of the people in respect to issuing bonds for the erection of school buildings, provides:

"That due notice of said election shall be given by the trustees of their respective districts, by written or printed posters not less than one foot square, signed by the trustees of their respective districts, stating the time, place and hours of said election, posted at not less than six public, conspicuous places in the district for ten days previous to the day of the election, and by one insertion thereof in the newspaper, if any, published in said district."

It will be observed that this statute does not fix the hours within which the election must be held, leaving the time, place and hours of the election to be designated by the board of trustees in the order calling the election. We think, therefore, that when the order of election specifies the hours within which it shall be held, that this specification should be observed and the polls be opened and closed at the hours designated. It appears, however, in the record before us that 143 votes were cast in favor of the bond issue and 13 votes against it, and it is not shown that any of the votes were polled after four o'clock. We may, therefore assume that all the votes polled were cast between one and four o'clock, and this being so, the fact that the officers of election kept the polls open an hour later than they should have done, does not in any manner affect the result or the validity of the election.

It is further objected that the voting was viva voce, but this manner of voting is expressly authorized by section 4481, and so there is no merit in this contention.

Nor is there any substance in the suggestion that colored people were not permitted to vote at the election. The election was ordered for the purpose of erecting a graded school building for white persons, and the colored people had no concern in the election. The property of colored people cannot be taxed to support the school or pay for the bonds issued to erect the building, nor can colored children attend the school. It is so provided in section 4487 of the Statute.

The judgment upholding the bond issue is affirmed.