## McCrocklin v. Nelson County Fiscal Court, et al.

### (Decided February 27, 1917.)

### Appeal from Nelson Circuit Court.

1. Counties—Fiscal Management and Taxation.—An indebtedness created in a previous year and remaining unpaid, must be counted by the fiscal court of a county in computing the indebtedness which the county may incur in a subsequent year under section 157 constitution, forbidding a county to become indebted in any manner, in any year, beyond the income and revenue provided for the year, without the assent of two-thirds of the voters thereof, voting in an election to be held for that purpose.

2. Counties—Fiscal Management and Taxation.—A fiscal court may not, without a vote of the people of the county, create in one year a debt to be thereafter paid in subsequent years, out of the income and revenue for such subsequent years, for the payment of which no provision can be made out of the income and revenue of that year.

3. Counties—Fiscal Management.—The income and revenue of a year may include something beyond, or in addition to, the taxes collected for such year; but, if so, it must consist of resources owned by the county and in the hands of the county treasurer or fiscal court, which are not only reasonably solvent, but which, in ordinary events, may fairly be relied on as equivalent to cash.

4. Counties—Fiscal Management—Indebtedness.—While a county, through its fiscal court, may in any year, make its contracts in anticipation of its revenue and income for such year instead of awaiting its collection to do so, the law as well as good business methods, require that the fiscal court shall not create debts in anticipation that the full amount of revenue will be collected. In creating debts the fiscal court should make allowance for a loss of such a percentage of the revenue, from failure to

collect, as would keep the expenditures for the year reasonably well within the amount of the revenue actually collected. If, however, in good faith a county does, in anticipation of its proper revenue, create debts in excess of what it collects, this surplus debt must be carried as a debt to the next year, and succeeding years until paid, and must be taken account of as an indebtedness of that year, and succeeding years, until paid, in exactly the same manner as if the carried-over debt were created in the year to which it was carried. If a county has a surplus left at the end of any year after paying all of its debts, it becomes in the next year an asset and may be counted as a part of the county's revenue of the next year.

5. Counties—Fiscal Management—Indebtedness—Issuance of Bonds. —A fiscal court is without authority to issue or sell bonds of the county to meet or carry its outstanding indebtedness, without the assent of two-thirds of the voters of the county, voting in an election held for that purpose. Section 1857, Kentucky Statutes, does not confer upon the fiscal court such authority; its only object was to permit counties to issue bonds to take care of debts created before the adoption of the present constitution. Section 1852 only confers authority upon the fiscal court to issue bonds, or refund a bonded debt, voted by the people.

6. Counties—Fiscal Management—Issuance of Bonds.—Although a fiscal court may have issued and sold bonds of the county without legal authority, if the debt for which the bonds were issued was legally created, then the bondholder still has his debt against the county, and the bond is merely an evidence, as would be an interest-bearing warrant, of what the county owes him. He can collect the debt with interest. The county, however, cannot carry it as a bonded debt, but must do so as an annually created debt, and pay it out of the revenue of each year until it is paid in full. If the county fails to pay it the year of its creation, or the year following, it continues to remain a subsisting debt against the county and must be taken into account in estimating its indebtedness each year, until it has been fully paid.

J. SMITH BARLOW for plaintiff.

M. M. LOGAN, Attorney General, and R. C. CHERRY for defendants.

OPINION OF CHIEF JUSTICE SETTLE ON MOTION TO REINSTATE INJUNCTION.

The plaintiff, Less McCrocklin, a property owner, taxpayer and resident voter of Nelson county, suing in his own right and for all other taxpayers of the county, by this action instituted in the circuit court of that county against the defendants, Nelson fiscal court, the county judge and several justices of the peace composing it,

named in the petition, sought to restrain them, by injunction, from making certain contracts for turnpike, road and bridge repairs and construction, requiring, as alleged, the expenditure of moneys which, together with the amount necessary to discharge the county's current, existing indebtedness, would largely exceed its revenue from all sources for the current fiscal year. The judge of the Nelson circuit court being absent from the county, a temporary injunction on plaintiff's application was granted by the clerk thereof, after due notice to the defendants of the time and place of such application and the execution by the plaintiff of the required bond. Thereafter on the defendants' motion and after due notice to the plaintiff, the injunction granted by the clerk was dissolved by the judge of the circuit court, and the case is now before me as Chief Justice of the Court of Appeals on the plaintiff's motion to reinstate the injunction.

It is alleged in the petition that the indebtedness of Nelson county at the beginning of the present year amounted, in the aggregate, to $83,000.00, made up of the following items: $55,000.00 of floating indebtedness incurred in purchasing certain turnpikes of the county, and costs of litigation arising therefrom, including attorneys' fees; also expense incurred in repairing and constructing bridges, roads, turnpikes, etc. This floating indebtedness of $55,000.00 was, on November 21st, 1916, attempted to be funded by the issue of fifty-five $1,000.00 bonds, running from two to fifteen years after date, bearing 4¾ per cent. interest, payable semi-annually. December 1st, 1916, the bonds were sold to W. E. Williams of Lexington for $55,029.00. $20,000.00 of the $83,000.00 indebtedness, evidenced by forty notes of $500.00 each, bearing 5 per cent. interest, is owing by the county to the Peoples Bank of Bardstown. The remaining $8,000.00 of the $83,000.00 indebtedness arose out of bridge and pike repairs and construction for which interest-bearing warrants have been issued by the county.

It further appears from the allegations of the petition, and is admitted by the answer, that the fiscal court has awarded contracts, looking to the repair and construction of bridges, turnpikes and roads, that will require an expenditure of $15,000.00; and is about to award additional contracts for like purposes that will require an expenditure of $25,000.00, and these sums, aggregating $40,000.00, when added to the $83,000.00 of existing indebtedness will make a total indebtedness of $123,000.00.

It is also alleged in the petition that the county's revenue and income for the present year will be as follows: Amount to be realized from tax levy of 50 cents on each $100.00 of the $10,500,000.00 taxable property of the county, and poll tax of $1.00—$55,000.00. According to this estimate the total revenue and income of the county for the present year would lack $28,000.00 of paying its existing indebtedness of $83,000.00, and $68,000.00 of paying its existing and proposed indebtedness of $123,000.00. It should here be remarked that the above estimate of indebtedness does not include salaries of county officers or ordinary governmental expenses, that must necessarily be incurred and met during the present year.

The answer of the defendants admits that the indebtedness of the county existing, and to be incurred for the present year, is stated with approximate correctness by the petition, but alleges that the $55,000.00 thereof evidenced by the bonds sold to Williams should not be treated as an indebtedness to be provided for or paid out of the revenue of the county for the present year, for the reasons: (1) That $34,000.00 of the $55,000.00 was incurred by the payment of judgments against the county in favor of certain turnpike companies on account of the purchase of the stock thereof, in order to free the turnpikes of toll charges; and that when the voters of the county, by a two-thirds majority, voted in favor of free turnpikes, such vote, under the provisions of sec. 157 of the constitution, was, in legal effect, a vote in favor of incurring an indebtedness in excess of the revenue of the county provided for the year the vote was taken or any succeeding year. (2) That the fiscal court was empowered by sec. 1857 Kentucky Statutes, to fund the outstanding indebtedness of the county by the issuing of bonds therefor, and this being done by the issuance of the $55,000.00 of bonds maturing in two to fifteen years, and by creating a sinking fund within the limitations of the constitution sufficient to pay the interest on the bonds, and principal, as same mature, the bonded indebtedness of $55,000.00, except the amount thereof maturing each year, cannot be taken into consideration to deprive the fiscal court of the right to make contracts and to create indebtedness for the necessary maintenance of the highways and bridges of the county, and make necessary appropriations for defraying the ordinary governmental expenses.

It is, however, denied by the answer that the petition correctly states the revenue and income of the county that will be realized for the present fiscal year, and alleges that such revenue and income will substantially equal its indebtedness. That the value of the taxable property of the county according to the assessment of September 1st, 1916, is $12,000,000.00 instead of $10,500,000.00, as alleged in the petition, upon which a levy of 50 cents on each $100.00 will produce $60,000.00; that the county will receive from the levy of poll tax of $1.00, $3,500.00; that it has on hand uncollected, of the taxes levied for the year 1916, $3,300.00; and has in the hands of its treasurer, $15,000.00, making a certain total revenue of $81,800.00. It is also alleged in the answer, that the following items, constituting available assets or sources of revenue, in behalf of the county should be taken into consideration: The amount to be realized from the state road fund to which the county will be entitled for the year 1916, $7,872.39; amount from state road fund for the year 1917, $14,000.00; and that the county owns a farm and infirmary of the value of $16,000.00, which, added to the above enumerated items, would make its total available revenue and assets now and for the year 1917, $119,672.39.

Assuming, for the present, that the petition correctly includes the $55,000.00 of bonds sold to Williams as a part of the county's indebtedness of $83,000.00, to be provided for out of its revenue of the present year; and that the total of the county's indebtedness, including what it has contracted to expend, and proposes to expend, under contracts made, and to be made, as alleged in the petition, is $123,000.00, if we accept the contention made by the defendants' answer that the taxable property of the county amounts to $12,000,000.00, and that a levy of 50 cents on each $100.00 thereof will produce $60,000.00; and also that the $3,300.00 of delinquent taxes for the year 1916, the $7,872.39, which it is claimed will be received from the state road fund for the year 1916, the $14,000.00 to which it is claimed it will be entitled out of the state road fund for 1917, and the value of its county infirmary of $16,000.00, should all be included in estimating its available assets or sources of revenue for the year 1917, making its entire estimate $119,-672.39, it will still be found that this amount will fall short $3,327.61 of equaling its indebtedness.

From the showing made we are not inclined to regard the several items last mentioned as any part of the income of the county available for use during the year 1917. As to the item of $3,300.00, consisting of uncollected taxes levied in the year 1916, we assume that they were reported delinquent because they could not be collected, even by the coercive means prescribed by law for the collection of taxes. In any event, no excuse is offered by the answer for their non-collection, nor is it made to appear therein that any part of such delinquent taxes is collectable, or what steps have been, or will be, taken to enforce their collection. It may also be said with respect to the items of $7,872.39, state road fund, claimed by the defendants for the year 1916, and the $14,000.00 of such fund, to which they lay claim for the year 1917, that the answer furnishes no basis for such claims. Whether the county of Nelson has complied with the conditions which, under the law, would entitle it to any part of the state road fund, is not made to appear. In the absence of some showing of the county's right to these funds, we are unauthorized to treat them as available assets in estimating the income of the county for the year 1917. Obviously, the county farm and infirmary cannot be included in such estimate. The maintenance of such an institution for the care of the indigent and infirm of the county, dependent upon its charity, is as necessary as the maintenance of its turnpikes, public roads and bridges; and while it might, as suggested by defendants' counsel, convert the property into cash, it would, if this were done, have to provide the county with another farm and infirmary for the class mentioned, and could be compelled by law to do so. In other words, the duty which the law imposes upon the county to care for the indigent and helpless is a duty which it could not escape if it would. The income and revenue of a year may include something beyond, or in addition to, the taxes collected for such year; but, if so, it must consist of resources owned by the county and in the hands of the county treasurer or fiscal court, which are not only reasonably solvent, but which, in ordinary events, may be fairly relied on as equivalent to cash. Lawrence Co. v. Lawrence Fiscal Court, 130 Ky. 587. If, therefore, the items consisting of delinquent taxes, the expected amounts of state aid funds and the county farm and infirmary should not fairly be included in the estimate of the county's available income or resources, the deduction

of the sum total of these items from the known revenue or income of the county would make the total thereof less by $44,500.00 than the total of its indebtedness.

We must, however, sustain the defendants' contention that so much of the county's indebtedness of $55,000.00 as was incurred in purchasing the turnpikes therein and costs resulting from the ensuing litigation, and which the answer alleges to be $34,000.00, should be deducted from the total of its indebtedness as of the beginning of the present year, on the ground that it was authorized by a two-thirds majority of the votes of the county. This contention is supported by the case of Whaley, &c. v. Commonwealth, 110 Ky. 154, and Bardstown & Louisville Turnpike Co. v. Nelson Co., 117 Ky. 674. One of the questions involved in the first of these cases was whether the county of Nicholas had, by vote, authorized the fiscal court of the county to incur an indebtedness exceeding its revenue for the year to pay for the Maysville and Lexington turnpike, and other turnpikes for which that court subsequently contracted; and it was held that as, at an election submitting to the voters of the county the question whether they were in favor of free turnpikes and gravel roads, it resulted in a vote of 1665 for, to 483 against, the proposition, the two-thirds majority thus given in favor of free turnpikes and gravel roads authorized the incurring by the fiscal court of such indebtedness. But the principal question involved was whether the levy of a tax in excess of 50 cents on each $100.00 of taxable property of the county, made by the fiscal court in attempting to provide for the payment of the indebtedness incurred in the purchase of the turnpikes, was wholly void, or only void as to the excess over the constitutional limit; and it was held that the levy was void only as to the excess over the constitutional limit of 50 cents.

In other words, it was held that the incurring of the indebtedness by the county through the required majority of votes cast at the election, did not authorize the making of the tax levy over the 50 cent limit fixed by the constitution. Bonds were not issued or sold by the county to raise the money to meet such indebtedness, hence, no question involving its right to do so was raised or passed on. We assume, however, that the vote authorizing the indebtedness would have authorized the issuance and sale of bonds to enable the county to carry it until such time as a sinking fund would retire them.

The only effect given the election was that it allowed the county to create an indebtedness in excess of its revenue for the current year, to be met by future taxation.

In Bardstown & Louisville Turnpike Co. v. Nelson Co., *supra*, the action grew out of the purchase by the fiscal court of Nelson county of the Bardstown and Louisville turnpike and other turnpikes in the county, and one of the issues raised was as to the validity of the vote under which the county had contracted. The nature of this issue and its bearing upon other questions involved, as well as the features that distinguish the case from that of Whaley, &c. v. Commonwealth, *supra*, will fully appear in the following excerpt from the opinion:

"When the proposition was submitted to the voters of Nelson county whether they would adopt free turnpike and gravel roads, there was, also, submitted the question whether they were in favor of issuing bonds to pay for the roads. The first proposition received 1,370 votes in the affirmative, and 563 against it. But on the second proposition there were cast only 826 votes in favor of it, and 612 against it. From this it is argued that no authority was given to incur an indebtedness to be paid out of the revenues of future years; that section 157 of the constitution prohibits the incurring of a liability by a county beyond the revenues of the year in which it is incurred, unless the proposition is submitted to a vote of the people of the county, and receives in its favor two-thirds of the votes cast on that question. When the voters of Nelson county, by 1,370 votes, to 563, voted to acquire the turnpike roads, that necessarily involved the incurring of such indebtedness as might be required to pay for them. Merely voting for free turnpikes could not make them free. The voters must have known that they would have to pay for the roads, and their value was such that that could not possibly be done out of the revenues of any one year. The vote in favor of free turnpikes would be meaningless unless it was construed to mean that, if it prevailed by the constitutional majority, the necessary indebtedness was also provided for, in order to carry the vote into effect. That is the precise point decided in Whaley v. Commonwealth, for the use, etc., 110 Ky. 154, 23 R. 1292, 61 S. W. 35. But in this case there is this additional fact, not in the Whaley case: The bond question was also submitted at the same time, and failed of the two-thirds majority required by subsection 9 of section 4748b, Ky. St. 1903. This can not

mean, though, that 612 votes could annul 1,370 votes in favor of acquiring all the roads at once. Assuming that these voters knew the effect of their action, and intended it, the situation is this: By more than the constitutional majority the voters of the county decided to acquire all the turnpike roads in the county, and to make them free to all travel; and they, by virtue of that majority, invested the fiscal court with the power to incur an indebtedness beyond the revenues of the current year, in order to carry the will of the voters into effect. But at the same time the voters refused to issue and sell bonds on the public market to meet the indebtedness. They seemed to prefer that the county should arrange to carry this debt by its notes or contracts, and not by bonds. A vote to incur an indebtedness, and a vote to issue and sell bonds to meet it, are not necessarily the same thing. We are of opinion that the county was authorized by the vote to incur the indebtedness, but it could not issue and sell bonds in the market, as provided in subsection 9 of the statute (4748b). Counsel for appellee cite the case of Maysville & Lexington, etc. Co. v. Wiggins (104 Ky. 540, 20 R. 724), 47 S. W. 434, as sustaining a contrary doctrine. But the fact is overlooked that that case is discredited on that point, and declared not to be authority, in Whaley v. Commonwealth, *supra*."

It will at once be seen that the opinion in Bardstown & Louisville Turnpike Co. v. Nelson County, gives full support to the defendants' contention that the vote of the county in favor of acquiring the turnpikes, and by virtue of which the indebtedness for their purchase was incurred, authorizes the deducting of so much of such indebtedness as remained unpaid at the beginning of the present year, from the estimate of the county's total indebtedness then existing.

Revision of the estimate hereinbefore given of the indebtedness of Nelson county, necessary because of deducting therefrom its old turnpike debt of $34,000.00, will show that there yet remains $49,000.00 of the $83,-000.00, first stated as its total indebtedness, increased by the addition of the debt of $15,000.00 already incurred by contracts for bridge, turnpike and road construction, not yet completed, to $64,000.00, and to be further increased by the $25,000.00 for like work the fiscal court proposes to immediately contract to have done during the present year, to the sum of $89,000.00, excluding officers' salaries and other governmental expenses for the year; to meet

which the county will have, besides its revenue from taxation of $63,500.00, $15,000.00 in the hands of its treasurer, making a total of $78,500.00; less by $10,500.00 than the total of indebtedness.

If it should be contended that inasmuch as the fiscal court has not entered into contracts requiring the expenditures of the above item of $25,000.00, proposed to be appropriated for bridge, turnpike and road construction in the present year, it should not be included in the estimate of the county's indebtedness, and it is not so included, the county's total indebtedness would be reduced from $89,000.00 to $64,000.00, and thereby make its revenue and income for the year exceed its indebtedness $14,500.00, provided, this sum will not be consumed by officers' salaries and other governmental expenses. As the pleadings give no information respecting the amount that would be required to pay the salaries of the county officers and governmental expenses of the county during the current fiscal year, we are unable to say how much of this surplus of $14,500.00 would have to be appropriated to that object, or what surplus, if any, would be left after the payment of such salaries and expenses.

Sec. 157. constitution, provides:

"The tax rate of . . . . counties . . . . for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz.: . . . . for counties . . . . 50 cents on the $100.00; unless it should be necessary to enable such . . . . county . . . . to pay the interest on, and provide a sinking fund for, the extinction of indebtedness contracted before the adoption of this constitution. No county . . . . shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereon, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable with the persons with whom made; nor such municipality be authorized to assume the same."

Sec. 158, constitution, limits the total amount of indebtedness "including existing indebtedness which a county may incur for any purpose or in any manner." In Knipper v. City of Covington, 109 Ky. 187, it was held that both sections 157 and 158, constitution, impose

a limitation on the power of the county to create indebtedness; the first providing a barrier against any character or amount of indebtedness for any purpose, beyond the revenues of the year without a vote of the people; and the second, an additional barrier against the creation of indebtedness in the aggregate. We have repeatedly held that the object of the provisions contained in the sections referred to is to protect the people from their own improvidence, and that of their officers. The question to be here determined is, whether an indebtedness created in a previous year or years, and remaining unpaid, must be counted in computing the indebtedness which the county may incur in a subsequent year under sec. 157 of the constitution, forbidding it to become indebted in any manner, in any year, beyond the income and revenue provided for the year, without the assent of two-thirds of the voters thereof, voting in an election to be held for that purpose. The question seems to have been fully answered in Southern Bithulitic Company v. DeTreville, et al., 156 Ky. 513, in the opinion of which it is said:

"It is earnestly insisted for appellant that each year the municipality may become indebted without a vote of the people to an amount not exceeding the income and revenue provided for that year, and that in determining the amount of indebtedness only the indebtedness created in that year is to be counted. It is insisted that in sec. 158 the words used are 'incur indebtedness to an amount including existing indebtedness in the aggregate exceeding,' etc.; and that the words 'including existing indebtedness' and the words 'in the aggregate' are not contained in sec. 157. It is urged that this shows that the aggregate of indebtedness was not to be considered under sec. 157, but only the indebtedness incurred in the year in question. On the other hand, it is insisted that to adopt this construction of the constitution would be to make it unnecessary for the municipal authorities ever to take a vote of the people, and that they could create from year to year indebtedness without taking a vote of the people, until they had reached the limit prescribed in sec. 158. The decision of the question turns on the proper construction of these two sections. It will be observed that in sec. 157 the first clause limits the rate of taxation that may be levied. The last clause limits the power of the municipality 'to incur indebtedness in any manner or for any purpose to an amount exceeding,

in any year, the income and revenue provided for the year' without the assent of the people.  Both parts of the section must be looked to in determining its proper meaning.  A limitation upon the rate of taxation would have been of little value if debts without limit might have been created.  The purpose of the section as a whole was, first, to limit the rate of taxation, and, second, to require the municipality to live within its means.  The words 'to become indebted in any manner or for any purpose,' are equally as broad as the words used in sec. 158; for if a municipality in any year is already in debt $5,000.00, and creates another debt of $5,000.00, it will 'become indebted in the sum of $10,000.00.' The words 'in any manner' show that it was intended that the municipality should under no circumstances become indebted beyond the limits fixed.  To allow the municipal authorities in each year to create an indebtedness up to the income and revenue provided for the year, regardless of previous outstanding indebtedness created in former years, would be to defeat the plain purpose of the section in limiting the rate of taxation and in limiting the power of municipalities to become indebted in any manner or for any purpose beyond the income and revenue for the year; for under such a construction the limitations of the section as to the creating of indebtedness by a vote of the people would be practically useless. . . . . ''

After distinguishing the case from those of Knipper v. City of Covington, 109 Ky. 187, and Lawrence County v. Lawrence Fiscal Court, 130 Ky. 587, and demonstrating that they did not lay down a different rule, the opinion proceeds as follows:

''Section 180 of the constitution must be borne in mind in determining the meaning of section 157.  To illustrate: If a municipality in one year creates a debt and levies a tax to pay it, but the tax is not all collected, and so a part of the debt is left unpaid, this fund when collected in the following year, must be applied to the payment of this debt, and should not be considered in computing the income and revenue of the year unless the unpaid debt is also included in the estimate of the liabilities.  A creditor is not defeated in the collection of a debt that the council had the legal right to create merely because the tax levied is not collected, or the council misapplies the money that should have been paid to him.  Still the debt remains and must be considered in

determining the amount of indebtedness that may be incurred in the succeeding year, and each following year until it is paid. If the school debt was legally created in 1910 and 1911, the part unpaid in those years must be counted as a debt in each succeeding year until the debt is paid. No one interested in that debt is a party to this proceeding, and no facts being shown to establish the invalidity of the debt, we cannot assume its invalidity. A debt for school purposes is within the constitution inhibition no less than a debt for other purposes.''

To the same effect are the following cases: County Board of Education v. Board Trustees Hopkinsville Public Schools, 154 Ky. 309; Bradford v. Fiscal Court of Bracken County, et al, 159 Ky. 544; Fiscal Court of Franklin County v. Commonwealth, 139 Ky. 307; Bonta v. Fiscal Court of Mercer County, 144 Ky. 241. We think the foregoing authorities conclusive of the question under consideration and none of the cases relied on by defendants' counsel will, upon critical examination, be found to conflict with them. It is our conclusion, therefore, that the controlling idea in sec. 157, constitution, is that a county shall not create or contract in any year any indebtedness that cannot be paid out of its revenue and income for that year; and that it is not contemplated by the constitution that a county shall, without a vote of the people, create, in one year a debt to be thereafter paid in subsequent years, and for the payment of which no provision can be made out of the income and revenue provided for the year in which the indebtedness is created; and, moreover, that in any year all the outstanding valid indebtedness of the municipality, not created with the assent of two-thirds of the voters thereof, must be taken into consideration in determining whether in that year the county becomes indebted, in any manner or for any purpose, to an amount exceeding the income and revenue provided for the year. There is little or no reason why every county should not observe this rule, because its fiscal court can tell within a few hundred dollars, at least, the amount that will be collected each year, by way of revenue, by comparison with the collections of the previous year or years.

So while a county, through its fiscal court, may in any year make its contracts in anticipation of its revenue for such year, instead of awaiting its collection to do so, the law as well as good business methods would seem to require that the fiscal court should not create debts

in anticipation that the full amount of revenue will be collected. In other words, in creating debts it should make allowance for a loss of such a percentage of the revenue, from failure to collect, as will keep the expenditures for the year reasonably well within the amount of the revenue actually collected. On the other hand, when the revenue is anticipated and more debts are created than the revenue will pay, this condition is often brought about with a view of evading the constitutional limitations.

If, however, in good faith, a county does, in anticipation of its proper revenue, create debts in excess of what it collects, this surplus debt must be carried as a debt to the next year, and succeeding years until paid, and must be taken account of as an indebtedness of that year, and succeeding years, until paid, in exactly the same manner as if the carried-over debt was created in the year to which it was carried. This is clearly the meaning of sec. 157, constitution, and is so declared in Southern Bithulitic Company v. DeTreville, et al., and County Board of Education v. Board Trustees Hopkinsville Public Schools, *supra;* nor has there been decided in this jurisdiction any case that will be found in conflict with these. It is also true, that if a county has a surplus left at the end of any year, after paying all of its debts, it becomes in the next year an asset and may be counted as a part of the county's revenue of the next year.

Under this constitutional rule there is no authority for fiscal courts to issue bonds payable in two, ten or twenty years, because a debt created in one year must be paid in that year, or, if not, in the next year. Fiscal courts are not empowered to issue or sell bonds except in obedience to a vote of the people obtained in the manner provided by sec. 157, constitution; or to fund outstanding debts by the issue or sale of bonds, without a vote by the people as provided by that section. The case of Bardstown & Louisville Turnpike Co. v. Nelson Co., *supra,* in no sense supports defendants' contention that the fiscal court had the power to issue the bonds it sold Williams, to the extent, at least, of the $34,000.00 left of the indebtedness incurred by Nelson county in purchasing the turnpikes, for a reading of the opinion will show that this is a mistake. Indeed, the opinion holds to the contrary, for it expressly declares that the issue and sale of bonds by the county to meet or carry the in-

debtedness incurred in acquiring the turnpikes would not be authorized, in view of the defeat at the election of the proposition submitting that question to the vote of the people. To permit the fiscal court to issue bonds would be to substitute that court for the people and give the fiscal court authority that is confided to the people alone. The fiscal court has no more power to issue bonds in the manner here attempted than has the legislature; and in Stanley v. Townsend, 170 Ky. 833, it was held that the legislature was without such power. If a fiscal court may issue bonds to take care of a deficit in one year, it can do the same the next year and so on, as long as it may choose, without limit. The result would be that in the course of a few years, counties would have large bonded debts, perhaps as much as fifty or a hundred thousand dollars, without the sanction of a vote of the people. It follows from what has been said, that the fiscal court of Nelson county was without authority to issue the $55,000.00 of bonds sold Williams. Section 1857, Kentucky Statutes, is practically obsolete. Being enacted in March, 1892, only six months after the present constitution of the state was adopted, its only object was to permit counties to issue bonds to take care of floating debts created before the adoption of the constitution. Section 1852, Kentucky Statutes, confers authority on the fiscal court now to issue bonds or refund a bonded debt voted by the people. The construction of the statute contended for by defendants' counsel, would permit the fiscal court and not the people to create a bonded debt, in plain violation of the constitution. If the sections of the statute, *supra,* were capable of any other construction, they would have to be held unconstitutional, because violative of section 157 of the constitution.

What has been said suggests the inquiry what about bonds issued under this statute by the fiscal court in violation of the constitution? To this we would answer, if the debt for which the bonds were issued was legally created, then the bond holder still has his debt and the bond is merely an evidence, as would be an interest bearing warrant, of what the county owes him. He can collect it with interest. The county, however, cannot carry it as a bonded debt but must carry it as an annually created debt and pay it out of the revenue of each year until it is paid in full; and if the county fails to pay it the year of its creation, or the year following, it continues to remain a subsisting debt against the county and must

be taken into account in estimating its indebtedness each year until it has been fully paid. In this way the county of Nelson must discharge the $55,000.00 debt evidenced by the bonds it sold Williams. The bonds are to be treated as interest bearing warrants. This construction will not hurt the bondholder at all. The debt evidenced by his bonds, if legally created, will be just as valid and binding upon the county as if the fiscal court had the right to issue the bonds. The only difference will be that instead of the bonds running for fifteen years, as provided by their terms, they may be paid in any year and should be paid as soon as the county can discharge them. In other words, the bonds simply become interest bearing warrants such as the fiscal court is authorized to issue under section 1840a, Kentucky Statutes, or the same as interest bearing warrants now issued by the state that may be paid whenever the state has funds with which to pay them. It is proper here to observe that the fiscal courts which have issued such unauthorized bonds should be required to call them all in, and in lieu thereof, issue interest bearing warrants. The observance of this rule may cause some temporary inconvenience, but no one will lose anything by it and the people of the several counties of the state will be saved from being plunged into debt by the fiscal courts, which would be the inevitable result if such courts are at liberty to issue bonds, as was done by the Nelson county fiscal court. In other words, the observance of this rule will bring the fiscal courts back to the constitution and compel them to observe it. And will, at the same time, protect the people of the counties from the danger of reckless extravagance and improvidence on the part of the fiscal courts.

If the people in any county desire to carry, as a bonded debt, a debt for which the fiscal court has unlawfully issued bonds, the fiscal court can submit the question to the people, and if the bond issue be authorized by the requisite constitutional majority, given by the people, the bonds can then be issued to take the place of those unlawfully issued by the fiscal court. When the people vote to create a bonded debt, then a tax in addition to the 50 cent tax must be levied in such an amount as will enable the county to pay the interest and create a sinking fund to take up the bonds, leaving the 50 cent tax the court is authorized by the constitution to levy, to be used by it for necessary public purposes. The only

limitation on the right of the people of the county to vote taxes in excess of the 50 cent tax is the limitation provided in section 158. If this course is not followed the limitation in section 157 of the constitution is no limitation. It will not mean anything, because if the fiscal courts need not pay in one year the debts of that year, they can simply issue bonds again and again without limit. If it takes all the revenue, aside from current expenses, to pay in the following year, a debt lawfully created in the preceding year, it is better to so use it than to authorize the yearly creation of bond issues.

For the reasons indicated it is concluded that the judge of the Nelson circuit court erred in dissolving the plaintiff's injunction. Wherefore, it is ordered that the same be, and it is hereby, reinstated. The six other judges of the Court of Appeals sat with me in the consideration of this case and all concur in the conclusions expressed in this opinion.