## Bradford v. City of Glasgow, et al.

(Decided April 28, 1911.)

### Appeal from Barren Circuit Court.

Municipalities—Indebtedness Incurred—Constitutional Limitations
—Sale of Bonds.—It is not apparent from the allegations of
the petition that the existing indebtedness of the city of Glasgow
or that the new indebtedness that will be incurred by the sale of
the bonds to pay such existing indebtedness exceeded or will ex-
ceed the limitations imposed by sections 157—159 of the Constitu-
tion; we must conclude that the appellee city has not in the mat-
ter of incurring either indebtedness, violated the Constitution.

BAIRD, RICHARDSON & SUMMERS and PORTER & SANDIDGE for appellant.


W. R. GARDNER, GUY H. HERDMAN and JEFF WOOD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The object of this action was to enjoin the issuance and sale by the appellee, City of Glasgow, of bonds of the par value of $16,000, with the proceeds of which it proposes to pay an existing indebtedness of the city equaling that amount. The mayor and members of the city council were joined with the city as defendants. Appellant is a resident voter and taxpayer of the city of Glasgow, and he sued in his own behalf and for the benefit of other taxpayers of the city too numerous to be joined as plaintiffs in the action. The circuit court sustained a demurrer to the petition as amended, refused the injunction asked, and dismissed the action. From the judgment entered in conformity to these rulings this appeal is prosecuted.

It appears from the averments of the petition that Glasgow is a city of the fifth class, and that the question of whether the indebtedness of $16,000 by the issuance and sale of the bonds should be incurred by it, was, by an ordinance duly adopted by the city council and on proper notice, submitted to the decision of the qualified voters of the city at an election held November 8th, 1910, and that the votes of more than two-thirds of the voters of the city who took part in the election were cast in favor of the proposition to incur the indebtedness and issue the bonds. On November 10, 1910, another ordinance was adopted by the city council, declaring the result of the election, directing the issuance of the bonds and providing for the imposition of an annual tax on all property, real and personal, in the city for the payment of the interest to accrue on the bonds, and provide a sinking fund for the payment of the bonds at maturity. In other words, it appears from the petition that the election was held and the bonds issued pursuant to the power conferred upon the appellee city by section 3637, Kentucky Statutes, relating to cities of the fifth class.

The brief filed by counsel for appellant merely asked this court to pass upon the validity of the bonds and pro-

ceedings with reference to their issuance, without setting forth the grounds upon which he sought to enjoin their sale. We are advised, however, by the brief of counsel for appellee that the only objection interposed to them by appellant in the court below was that the appellee city was without power to issue and sell the bonds for the purpose of raising money to pay a past or existing indebtedness of the city. If such were the grounds of objection it can not be sustained upon the record as here presented.

This question seems to have been fully decided in the case of Morris v. Hoagland, et al., 116 S. W., 684. In that case the City of New Castle, following the adoption by its council of the necessary ordinances, the proper notice, and an election held for the purpose of taking the sense of the qualified voters of the city, had issued bonds for the purpose of raising money to pay an existing indebtedness of the city. Suit was brought by a taxpayer to enjoin the sale of the bonds and on the appeal of the case to this court, we held that where the ordinance providing for the submission to the voters of the city of the question of the issuance of bonds to pay the city's debts, the notice of the election resulting in favor of the issuance of bonds, and the ordinance providing for the issuance thereof complied with Kentucky Statutes, section 3705, and there was nothing to show that the debt thereby incurred would exceed the limitations fixed by the Constitution, sections 157-159, the taxpayer could not restrain the issuance and sale of the bonds, though there was nothing to show as to when the debts were created that were to be paid from the sale of the bonds, or what they were for.

In the opinion it was said:

"Every step taken by the board was regular and in order. * * * Since the ordinances comply with the provisions of the statute, and there is no allegation in the pleadings that the council in creating this indebtedness exceeded the constitutional limitations fixed by sections 157, 158 and 159, of the Constitution, we must conclude that they acted within their authority in providing for the creation of this indebtedness for $4,000. There is no showing in the record as to when these debts described in the ordinances were created, or what they were for, but, as the representatives of the town were desirous of paying same and the taxpayers were willing to vote a bond issue to enable them to do so, it is fair to presume that

they were just and valid claims against the town, and from the condition in the record before us we see no reason why the expressed will of the people should not be carried out by the issual and sale of the bonds, as provided for in the ordinances.''

A comparison of section 3705, Kentucky Statutes, under which New Castle, a city of the sixth class, derived the power to incur the indebtedness and issue the bonds mentioned in the case, supra, with section 3637, Kentucky Statutes, under which Glasgow, a city of the fifth class, obtained authority to issue and sell the bonds involved in the instant case, will show that the provisions of the two sections with reference to the powers conferred, are substantially the same.

It appears from the recitation in the ordinance ordering the election in the city of Glasgow that the existing indebtedness, which is to be paid from the proceeds of the bonds consists of unsatisfied accounts, judgments and other obligations of the city; such indebtedness being of the same character that was owing by the city of New Castle; and it is not alleged in the petition that any of the indebtedness of the city of Glasgow was illegally contracted. In the absence, therefore, of such an allegation, or showing, we must take it for granted that such indebtedness was legally contracted in maintaining the city government. Morris v. Hoagland, 116 S. W., 684; Rees v. Kranth, 120 S. W., 370; Tipton v. City of Shelbyville, 139 Ky., 541; Morgan v. City of Frankfort, 135 Ky., 178; Iglehart v. City of Dawson Springs, 143 Ky., 141. If it should turn out that any of the obligations constituting the indebtedness of the appellee city was illegally contracted, that is a question that must be settled between the city and its creditors, and though it may result in loss to the latter, that fact can not affect the validity of the bonds, or imperil the rights of the holders thereof.

It is not apparent from the allegations of the petition that the existing indebtedness of the city, or that the new indebtedness that will be incurred by the sale of the bonds to pay such existing indebtedness, exceeded, or will exceed, the limitations imposed by the sections of the Constitution, supra, we must, therefore, conclude that the appellee city has not in the matter of incurring either indebtedness, violated the Constitution.

The record affording us no ground for holding the bonds invalid, the judgment is affirmed.

Whole court sitting.