## Moss et ux. v. Board of Councilmen of City of Frankfort.

(Decided November 12, 1929.)

B. T. QUINN and DULIN MOSS for appellants.

F. M. DAILEY for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Mr. and Mrs. Dulin Moss, so it is charged, in the petition in this case, refused to pay taxes assessed against them by the city of Frankfort for the years mentioned in the pleadings, beginning about 1922 and continuing up to and including 1926. The ordinances making the levy are made a part of the pleadings, and everything appears regular on its face. The ordinance levied a tax of $1 on each $100 of taxable property in the city for each of the years for the general fund to take care of the current running expenses of the city government. The appellants base their entire contention on the illegality of that levy. They say that section 157 of the Constitution does not allow a town having a less population than 10,000 inhabitants to levy a greater rate of taxation than 75 cents on the $100 of taxable property.

Certainly they are correct in this contention, as the Constitution so reads, and the mandates of the Constitution must be obeyed, because they are mandates from the people. The appellants introduce in evidence the report of the United States Census Bureau for the year 1920, which shows that the census, when taken for that year, disclosed that Frankfort had 9,805 inhabitants. The city council, with that information before it, concluded that the city had more than 10,000 inhabitants, and the question is whether the city council had evidence substantive, material, and sufficient to overcome the prima facie population as established by the United States census.

The population of a city may be ascertained by the city council, and if the methods followed and the evidence adduced thereby are such as will enable the city council in the exercise of a reasonable discretion to determine that the city has more inhabitants than is shown by the United States census, it is within its rights in applying a tax rate justified by the actual population. But such evidence must be something of substance, and such as to induce a reasonable man, in the exercise of a reasonable discretion, to believe that the city has a population large enough to justify the tax rate which is imposed.

The population of a city may be ascertained by a census taken under an ordinance enacted by the city. O'Bryan v. City of Owensboro, 113 Ky. 680, 68 S. W. 858, 69 S. W. 800, 24 Ky. Law Rep. 469, 645; Jernigan v. City of Madisonville, 102 Ky. 313, 43 S. W. 448, 19 Ky. Law Rep. 1412, 39 L. R. A. 214; Griffin v. Powell, 143 Ky. 276, 136 S. W. 626. The two last-cited cases relate to the classification of cities under section 156 of the Constitution, which is altogether a different matter from imposing a tax rate under section 157 of the Constitution.

It is argued by counsel for the city that the courts have no power to go into the question of the population of the city of Frankfort, as that is a matter exclusively within the discretion of the legislative body, and that, when the legislative body has determined that a city has a certain population, its determination is final. That is the rule as it applies to such political questions, and we are not inclined to dispute the correctness of the position taken by counsel, as it relates to the classification of cities and towns under section 156 of the Constitution. Section 157 of the Constitution is altogether a different matter, however. That section does not allow a city council to

impose a tax rate based upon the classification of cities, but upon the actual population of the cities, and a city having less than 10,000 may not, through its city council, impose a tax rate of more than 75 cents on the $100 of taxable property, unless it should be necessary to enable such city to pay the interest on, and provide a sinking fund for, the extinction of indebtedness contracted before the adoption of the present Constitution, or where a greater rate of taxation has been authorized by the vote of the people legally taken. The tax rate imposed by the city council was not for purposes allowed by the Constitution as is shown by the ordinances, and for that reason the rate above 75 cents on the $100 was illegal and void, unless it was shown that the city of Frankfort had at the time of making the levy a population greater than 10,000.

We do not think that the evidence showed that fact. The taking of a census is the best way to determine the question, and it would be certainly difficult to determine it otherwise, although we are not prepared to say that it might not be shown by evidence other than by a census taken under the directions of the city council. Certainly the evidence taken in this case is of little value. It is largely made up of statements by witnesses that the general reputation of Frankfort is that it has more than 10,000 population. Some of the witnesses stated that there were fewer vacant houses in the city than at the time the United States census was taken. This evidence is vague and uncertain. There is no tangible evidence that would enable the court to say that the city had increased in population. In 1910 the United States census showed that the city had more than 11,000 population, and in the succeeding 10 years there was a decrease in population of about 10 per cent. The city directory was used as a basis of counting the population, but there is nothing to show that it is either correct, or approximately so. There was no effort to show that the number of telephone subscribers had increased, or that the school population had increased, or that the number of water subscribers had increased, or that the number of voters had increased. It may be that, where the question is a close one, such evidence would be sufficient to show that there had been an increase in population, but the best way to determine the question is to have a census made.

This opinion does not determine that Frankfort did not have more than 10,000 population, but does deter-

mine that the evidence in this case does not show that fact. It follows, therefore, that appellants were within their rights in refusing to pay the tax bills, and therefore they should not be charged with interest or penalties. They should pay the tax bills after reducing the rate for general purposes to 75 cents on the $100 of assessable property.

Judgment reversed, and cause remanded, with directions for proceedings consistent with this opinion.

Whole court sitting.