## City of Frankfort v. Fuss et al.

(Decided June 20, 1930.)

144

F. M. DAILEY for appellant.

TURNER & CREAL for appellee Fuss.

E. C. O'REAR and WILEY MARSHAL for other appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

John Fuss, a citizen and taxpayer of Frankfort, brought this action in April, 1928, against the city, alleging in his petition these facts: Frankfort is a city of the third class, having a population of more than 10,000 but less than 15,000; the assessed value of the property in the city is $7,753,151. The city has an outstanding, legally incurred bonded indebtedness of $290,000, of which $215,000 was incurred before the adoption of the present Constitution. In addition to this, the city had an outstanding floating indebtedness of approximately $121,000 legally incurred. The city for many years made no provision to create a sinking fund to pay the interest or retire the bonded indebtedness of the city, but every year, since the adoption of the Constitution, took from the revenues derived from the regular levy a sum sufficient to pay the interest on the bonded indebtedness, thereby depriving the city of funds sufficient to pay the current expenses of the city, although the city did not in any year create an indebtedness in excess of revenues of that year. On April 9, 1928, the council enacted an ordinance providing for the issuing of $120,000 of bonds to fund a like amount of the floating indebtedness of the city, providing by the ordinance when the bonds should be payable and providing for a levy each year to provide a sinking fund and pay the interest on the bonds. A purchaser had offered to take the bonds at par, bearing interest at 4¾ per cent. per annum. He alleged that the ordinance created an indebtedness of the city beyond the current revenues for the year and prayed that the council be enjoined from issuing and selling the bonds. Other taxpayers intervened and filed pleadings, charging that the indebtedness of $120,000 had not been lawfully created, also that the city had not a population of 10,000 and that the council was without authority to issue the bonds. Proof was taken, and on final hearing the circuit

court granted the plaintiffs an injunction as prayed. The city appeals.

The proof wholly fails to show that any part of the indebtedness was illegally created. The presumption is that the officers did their duty. The burden of proof to show the illegality of the indebtedness was upon the party alleging that the indebtedness was illegal. Bradford v. City of Glasgow, 143 Ky. 404, 136 S. W. 647, and cases cited. Section 157 of the Constitution, after providing that the tax rate of cities, towns, etc., shall not exceed a certain amount, concludes with these words: "No county, city, town, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same."

Section 158 of the Constitution, after providing that the cities and towns, etc., shall not be authorized to incur indebtedness exceeding a certain percentage of the taxable property therein, concludes with these words: "Provided, Any city, town, county, taxing district, or other municipality may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this Constitution: And provided further, If, at the time of the adoption of this Constitution, the aggregate indebtedness, bonded or floating, of any, town, county, taxing district or other municipality, including that which it has been or may be authorized to contract as herein provided, shall exceed the limit herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding two per centum (2%), and no such county, taxing district or other municipality, in an amount exceeding one per centum (1%), in the aggregate upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have

been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless in case of emergency, the public health or safety should so require. Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality.''

In the City of Winchester v. Nelson, 175 Ky. 69, 193 S. W. 1040, 1043, the court thus stated its conclusion as to the proper construction of these provisions: ''It is our judgment that the proper construction of these three provisions of sections 157 and 158 of the Constitution is: First, that the first provision of section 157 is simply a limitation upon the power of the taxing authorities, without the assent of ·the voters, to levy taxes; second, that the second provision of section 157 permits with the consent of the voters, the creation of an indebtedness that cannot be taken care of out of the levy permitted in the first part of section 157; and, third, that section 158 of the Constitution places a final limitation upon the power to create debt of the voters themselves.''

In Vaughn v. Corbin, 217 Ky. 521, 289 S. W. 1104, 1105, the court, after quoting section 158 of the Constitution and section 3284, Kentucky Statutes, said: ''But it will be observed that bonds issued to fund the lawfully contracted floating indebtedness of any city are excepted out of the operation of that section. It results therefore that the city council has power to issue the $75,000 of bonds, although this may increase the bonded indebtedness of the city beyond the limit fixed in that section. . . .

''The issuing of bonds to fund a floating debt adds nothing to the indebtedness of the city. It merely changes the form of the existing debt. The power to fund a floating indebtedness is as broad as the power to incur such indebtedness.''

To same effect, see City of Covington v. O. F. Moore Co., 218 Ky. 102, 290 S. W. 1066; Wilson v. Covington, 220 Ky. 798, 295 S. W. 1068; Davis v. Newport, 224 Ky. 546, 6 S. W. (2d) 693; Baker v. Rockcastle County Court, 225 Ky. 99, 7 S. W. (2d) 846; Welch v. Nicholasville, 225 Ky. 312, 8 S. W. (2d) 400; Wilson v. Board of Education, 226 Ky. 476, 11 S. W. (2d) 143; Rowland v. Paris, 227 Ky. 570, 13 S. W. (2d) 791; Masonic, etc., Home v. Corbin, 229 Ky. 375, 17 S. W. (2d) 215.

The record indicates that the debt of $120,000 has been gradually created by reason of unusual expenses falling upon the city. To illustrate, the bridge over the Kentucky river, connecting the south side and the State Capitol with the main business portion of the city, became in a dangerous condition, and the public safety required that it be repaired at once, and this cost a large sum. Two of the main sewers fell in and the outfall sewer was not properly performing. The public needs required that these be put in order, and there were other like unusual expenses, in all amounting to a large sum. In addition, no proper levy was made to pay interest on the bond issues and provide a sinking fund. The record does not show that the debt was illegally created or that the city funds have been improperly expended. The debt is now largely represented by outstanding city warrants, bearing interest at 6 per cent. The bonds sold at par will lessen the interest on the debt, which cannot be paid by a levy made in one year. The council therefore did not exceed its authority in passing the ordinance providing for the bond issue and the injunction prayed should not have been granted.

Section 159 of the Constitution provides: "Whenever any city, town, county, taxing district or other municipality is authorized to contract an indebtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same."

Section 180 also provides: "Every act enacted by the general assembly, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax, shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

Under these provisions the council should annually make a separate levy sufficient to provide for the interest and sinking fund of each of its bond issues made since the adoption of the Constitution, and the money in each fund should be kept separate and not used for any other purpose. A separate levy to cover the general expenses of the city should be made annually, and this fund should only be expended for the purposes for which it was levied. A separate levy to pay the interest on the

bonds issued before the adoption of the Constitution should also be made and this fund should be kept separate and only used for that purpose. If new bonds are issued, then a levy to pay the interest and provide a sinking fund should be made annually and the fund should only be so applied.

By section 157 of the Constitution the tax rate for Frankfort may not be over $1 on each $100 of the taxable property therein if it has a population of 10,000, and it may not be over 75 cents on each $100 of taxable property if the population is under 10,000 "unless it should be necessary to enable such city . . . to pay the interest on, and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this Constitution." By the terms of the section, the tax limit there provided does not include the levy necessary to pay the interest on and provide a sinking fund for the payment of any indebtedness contracted before the adoption of the Constitution. The city may make the necessary levy for this purpose, and in addition may make the necessary levy for other purposes; not exceeding the constitutional limit; for the city must maintain its existence and protect life and property and to this end may levy up to the constitutional limit when necessary. An issue is made as to whether the population is under or over 10,000; but no levy has been made; and the propriety of any levy when it is made will depend on whether it is warranted by the rule above indicated. This question was not presented in Moss v. Frankfort, 231 Ky. 470, 21 S. W. (2d) 813, for in that case there was no showing that the levy included any interest or provision for a sinking fund on indebtedness created before the adoption of the Constitution.

"The word 'indebtedness,' as used in Const. sec. 157, refers to indebtedness created by contract." O'Bryan v. Owensboro, 113 Ky. 680, 68 S. W. 858, 859, 69 S. W. 800, 24 Ky. Law Rep. 469, 645; Overall v. Madisonville, 125 Ky. 684, 102 S. W. 278, 31 Ky. Law Rep. 278, 12 L. R. A. (N. S.) 433.

It does not include a liability imposed by law for what is done without right. German Bank v. Covington, 164 Ky. 295, 175 S. W. 330, Ann. Cas. 1917B, 189; City of Henderson v. Redman, 185 Ky. 146, 214 S. W. 809, 7 A. L. R. 346.

It was not the purpose of the Constitution to disable a municipality to perform its civic duties imposed on it by law and necessary to its existence.

By section 158 of the Constitution Frankfort could not incur indebtedness, including existing indebtedness, exceeding in the aggregate 5 per cent. "on the value of the taxable property therein;" but this is followed by the proviso that it at the time of the adoption of the Constitution, its indebtedness exceeded the limit prescribed, then it should not increase its indebtedness in an amount exceeding 2 per cent. of the taxable property therein. It is shown that Frankfort then had a bonded indebtedness of $308,000. It is also shown that in 1920 the taxable property of the city was about $6,000,000. This shows that the bonded indebtedness at the adoption of the Constitution was more than 5 per cent. of the taxable property, for the proof shows that Frankfort has grown steadily. So under the facts shown it must be presumed that $308,000 was more than 5 per cent. of the city's taxable property when the Constitution was adopted nearly forty years ago. This gave the city the right to the 7 per cent. limit at the time the Constitution was adopted. As the taxable property in the city is now $7,622,157, the bonded indebtedness $290,000, when added to the $120,000 here in controversy, will make the total within the limits provided by the Constitution as things then stood. The fact is, as shown by the record, that the city has not really on the whole increased its indebtedness. It has only changed the form of it by not observing the constitutional direction to keep the funds separate and apply each fund only to the purposes for which it was levied. The concluding words of section 158 were inserted to maintain municipal credit and aptly cover the situation presented here. Five per cent. of $7,622,157 is $381,107.85. This would make $18,892.15 of the proposed bond issue in excess of the 5 per cent. limit; but from the record it is clear that more than this much of the present indebtedness has been in existence since the Constitution was adopted and is the result of the city's then financial condition.

These rules are well settled and must be kept in mind:

1. The ordinance levying taxes must distinctly specify the purpose for which it is levied, and the money may not be applied to any other, leaving unpaid the purpose so specified. The provision of the Constitution is

self-executing, and any officer so knowingly misapplying the money is personally liable therefor.

2. The city may not become indebted in any year in excess of the revenue provided for the year, and any indebtedness so incurred is void.

3. The city may not become indebted more than 5 per cent. of the value of the taxable property therein; and though it was indebted more than 5 per cent. of the value of its taxable property when the Constitution was adopted, when part of this indebtedness is paid and the amount left is less than 5 per cent. it may not thereafter increase its indebtedness above 5 per cent., unless in an emergency the public health or safety should so require.

4. The tax levy limit in section 157 does not include a tax levied to pay interest and provide a sinking fund for the payment of bonds issued on a vote of the people since the adoption of the Constitution or on bonds then in existence or bonds issued in renewal thereof, but it does include a tax levied to pay interest or provide a sinking fund for such bonds as here are in controversy issued to fund a floating debt.

The judgment is reversed, and the cause is remanded for a judgment dismissing the petition and intervening petition with costs.

Whole court sitting.

Chief Justice THOMAS and Judges REES and DIETZMAN dissent.

## DISSENTING OPINION BY JUDGE REES.

In view of the importance of the question involved in this case, and since the majority opinion is rested upon some recent opinions of this court which, I believe, have placed an erroneous construction on sections 157 and 158 of the Constitution, I deem it necessary and proper to set forth the reasons for my dissent.

After fixing the maximum tax rate that may be levied by a municipality, section 157 of the Constitution provides that: "No county, city, town, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted

in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same." Section 158 limits the aggregate indebtedness that may be incurred by a municipality.

The city of Frankfort has incurred a floating indebtedness of approximately $120,000, which the city council proposes to fund by issuing bonds extending over a period of 30 years. The city now has a bonded indebtedness of $290,000, $215,000 of which was created prior to the adoption of the present Constitution but which has been refunded. The assessed valuation of property in the city is $7,622,157, and under the 5 per cent. limitation contained in section 158 of the Constitution, the city may incur a bonded indebtedness of $381,107.

The principal question here involved is whether or not the city can issue any bonds to fund a floating indebtedness without a vote of the people. The majority opinion holds that it can, and further that the 5 per cent. limitation provided by section 158 of the Constitution does not apply to a floating indebtedness which was valid when created. The majority opinion is supported by some recent opinions hereinafter noticed, but is in direct conflict with a long line of decisions that have never been expressly overruled. The concluding words of section 158 of the Constitution are as follows: "Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality." Does this provision apply to floating indebtedness incurred *subsequent* to the adoption of the Constitution, or does it apply only to floating indebtedness incurred *prior thereto?*

Section 3284, Kentucky Statutes, governing cities of the third class, provides: "Subject to the limitations imposed by the Constitution and this act, the council shall have the power to contract debts and to borrow money, and to issue the bonds of the city therefor, and to control the finances and the property of the city. The common council shall also have the power to issue bonds in renewal of any bonds theretofore lawfully issued, and to fund any floating indebtedness of the city lawfully contracted. No bonds of the city shall be sold below par." I do not find a similar provision in the charters of cities of other classes. There is a section of the statutes somewhat similar which applies to counties, being

section 1857 of the Statutes. That section reads, in part: "Power and authority is hereby granted to the court of claims of fiscal court of the several counties of this Commonwealth owing money or debts contracted in the construction, repair or building or remodeling of any courthouse, jail or other public building, or bridges or turnpikes, to fund such debt or any part of it, and to issue the bonds of such county for the purpose of taking up and cancelling such debts."

In McCrocklin v. Nelson County Fiscal Court, 174 Ky. 308, 320, 192 S. W. 494, 500, it was held that the controlling idea in section 157 of the Constitution is that a county shall not create or contract in any year any indebtedness that cannot be paid out of its revenues and income for that year. If, however, in good faith, a county does, in anticipation of its proper revenue, create debts in excess of what it collects, this surplus debt must be carried as a debt to the next year, and succeeding years until paid, and must be taken account of as an indebtedness of that year and succeeding years until paid, in exactly the same manner as if the carried over debt was created in the year to which it was carried. In referring to section 1857 of the Statutes, it was said: "Section 1857, Kentucky Statutes, is practically obsolete. Being enacted in March, 1892, only six months after the present Constitution of the state was adopted, its only object was to permit, counties to issue bonds to take care of floating debts created before the adoption of the Constitution."

Section 3284, quoted above, which authorizes councils of third class cities to issue bonds to fund any floating indebtedness of the city lawfully contracted, was also enacted in its present form a few months after the adoption of the present Constitution.

McCrocklin v. Nelson County Fiscal Court, supra, was before Judge Settle on a motion to reinstate an injunction. All members of the court sat with him on the hearing of the case and concurred in the conclusions expressed in the opinion, and the opinion was ordered to be officially reported. In Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323, the case was before the court on its merits and, in an opinion by Judge Carroll, who had been a member of the Constitutional Convention, the views expressed in the opinion in McCrocklin v. Nelson County Fiscal Court were reaffirmed.

In Buford v. Jessamine County, 189 Ky. 277, 224 S. W. 769, the fiscal court of Jessamine county proposed to

issue bonds to fund a valid floating debt of $43,000. The McCrocklin Cases were cited, and it was held that the fiscal court had no authority to create a bonded debt against the county unless directed so·to do by a vote of the people; and that although the floating indebtedness might be valid and must be paid by the county, it could not be evidenced by bonds extending over a period of years. The McCrocklin Opinions have been cited with approval in the following cases: City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040; Carman & University of Kentucky v. Hickman County, 185 Ky. 630, 215 S. W. 408; Carter v. Kreuger & Son, 175 Ky. 399, 194 S. W. 553; Wesley v. Tartar, 197 Ky. 493, 247 S. W. 353; Tartar v. Wesley, 200 Ky. 14, 252 S. W. 109; Pulaski County v. Richardson, 225 Ky. 556, 9 S. W. (2d) 523; King v. Christian County Board of Education, 229 Ky. 234, 16 S. W. (2d) 1053. In Rice v. City of Pineville, 207 Ky. 530, 269 S. W. 719, the city of Pineville proposed to issue $15,000 of bonds for the purpose of refunding the unpaid portion of a bonded debt created prior to the adoption of the present Constitution. The validity of the original indebtedness was admitted, but it was urged that the city had outstanding and unpaid other bonds in excess of the limit permitted by section 158 of the Constitution, and that the proposed issue exceeded the revenue and income of the city for the current year and had not been authorized by a vote of the people as provided by section 157 of the Constitution. In the course of the opinion it was said: "As the original indebtedness was authorized by an act of the Legislature, and the Constitution then in force neither limited the power of the Legislature in such matters nor the indebtedness that cities might thus incur, it is clear that such limitations in the subsequently adopted Constitution did not affect any such pre-existing indebtedness. Besides, section 158 expressly recognizes the validity of such pre-existing indebtedness, excludes it from the limitations thereby imposed, and provides that: 'Nothing herein shall prevent the issual of renewal bonds, or bonds to fund the floating indebtedness of any city, town, . . . . taxing district or other municipality.' This court in numerous cases had held that contracts made prior to the adoption of the present Constitution are not affected by sections 157 and 158 thereof, and that neither of these sections prevents the refunding upon maturity of bonds legally issued theretofore."

The first McCrocklin case was decided on February 27, 1917, and the construction placed upon sections 157 and 158 of the Constitution and section 1857 of the Statutes remained undisturbed until the case of Vaughan v. City of Corbin, 217 Ky. 521, 289 S. W. 1104, was before the court, which was decided on January 11, 1927. In Vaughn v. City of Corbin, 217 Ky. 521, 289, S. W. 1104, it was held that the floating indebtedness of a city of the third class could be funded and that the 5 per cent. limitation provided for by section 158 of the Constitution did not apply to such a debt. The floating indebtedness in that case had been created by the failure of the city council to levy the maximum rate during preceding years. The validity of the debt when created was conceded. The total assessed value of all property in that city was $3,004,357. The outstanding bonded indebtedness of the city before the bonds to fund the floating indebtedness. were issued amounted to $84,000. The floating indebtedness amounted to $75,000. The opinion also cited section 3284 of the Statutes. This section had never been cited or referred to theretofore. It was subsequently referred to in Welch v. City of Nicholasville, 225 Ky. 312, 8 S. W. (2d) 400.

In Wilson v. City of Covington, 220 Ky. 798, 295 S. W. 1068, 1069, decided June 24, 1927, it was held that the city of Covington, a city of the second class, could issue bonds to fund a valid floating indebtedness. Vaughn v. City of Corbin was cited, but in referring to section 158 of the Constitution, it was said: "It will thus be seen that the issuing of these bonds will not increase the indebtedness of the city beyond the constitutional limits."

In Wilson v. City of Covington, 220 Ky. 795, 295 S. W. 1069, 1070, it was held that a floating debt that had accumulated from year to year could be funded, the validity of the debt being conceded. The debt had been created by the failure of the city to exercise its full taxing power for the four preceding years. Referring to section 158 of the Constitution, it was said: "So the bonds in question may be issued without going beyond the 10 per cent. limit provided in the Constitution."

In Davis v. City of Newport, 224 Ky. 546, 6 S. W. (2d) 693, it was held that the floating indebtedness of a city could be funded, the validity of the debt being conceded. In Welch v. City of Nicholasville, 225 Ky. 312,

8 S. W. (2d) 400, 401, it was held, that a bonded indebtedness legally created since the adoption of the present Constitution could be refunded. Referring to section 158 of the Constitution, it was said: "Section 158 of the Constitution provides the limit of indebtedness that may be incurred by a municipality. But the section concludes with these words: 'Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality.' "

In Wilson v. Board of Education of City of Russellville, 226 Ky. 476, 11 S. W. (2d) 143, it was held that the board of education of the Russellville graded school district could refund a bonded indebtedness theretofore legally incurred, since the issual of bonds to refund such an indebtedness added nothing to the indebtedness of the board, only the form of the existing debt being changed.

In Rowland v. City of Paris, 227 Ky. 570, 13 S. W. (2d) 791, 792, an ordinance was enacted providing for the issuance of bonds in the amount of $50,000, the proceeds of which were to be used to fund the floating indebtedness of the city. A taxpayer sought to enjoin the issuance of the bonds, and in his petition alleged that the indebtedness was incurred from year to year beginning in 1916, and that it was occasioned by reason of the failure of the city to levy a tax sufficient to take care of the current obligations of the city, and that the city did not levy taxes for these years up to the constitutional limit. It was further alleged that all of the debts going to make up the $50,000 were binding and valid obligations on the city at the time they were incurred. It was held that the court properly sustained a demurrer to the petition, since it contained no allegation that would show that the whole indebtedness was invalid. In the course of the opinion it was said: "Section 158 of the Constitution contains a proviso that nothing contained in that section shall prevent the issuing of renewal bonds or bonds to fund the floating indebtedness of any city, town, county, taxing district, or other municipality."

All of the above cases cite Vaughn v. City of Corbin, but neither of the McCrocklin cases is referred to, either in the opinion in the Vaughn case or in the opinion in any case that has followed it.

In Baker v. Rockcastle County Court, 225 Ky. 99, 7 S. W. (2d) 846, a taxpayer sought to enjoin the fiscal

court from issuing bonds for the purpose of funding the floating indebtedness of the county. It was held that there were no sufficient allegations in the petition showing that the outstanding indebtedness was not legal when incurred, but it was held that a county may issue bonds to fund valid floating indebtedness. In the opinion, without the citation of authority, it was said: "Section 158 of the Constitution of itself gives that authority, as does also section 1857, Ky. Stats. The bonds when so issued take the place of the outstanding floating indebtedness, and, if that indebtedness was legally incurred and was a valid and existing obligation against the county, the bonds are likewise a valid indebtedness against the county."

In King v. Christian County Board of Education, 229 Ky. 234, 16 S. W. (2d) 1053, the county board of education of Christian county had become indebted from year to year in an aggregate sum of $150,000 at the end of 1923. That debt was subsequently reduced to $61,000, and in 1929 the board then in office proposed to issue funding bonds in the amount of $50,000 running through a designated period of time. It was held that the pleadings did not sufficiently allege facts showing either the legality or illegality of the floating indebtedness, but the rules announced in the McCrocklin and succeeding cases, that any deficit carried over from one year to another should be taken into consideration in measuring the amount to be expended during the following year, was approved. However, beginning with Vaughn v. City of Corbin and the cases following it, the right of a city council or fiscal court to fund a valid floating indebtedness by issuing bonds extending over a period of years without a vote of the people was either expressly or impliedly recognized.

The majority opinion is probably correct if the rule announced in Vaughn v. City of Corbin is adhered to. However, I am of the opinion that that rule will lead to serious abuses which the framers of the Constitution clearly intended to prevent and should be repudiated, and the earlier rule announced in McCrocklin v. Nelson County Fiscal Court and approved in numerous later opinions, which I deem to be eminently sound, should be followed. Vested rights acquired subsequent to the decision in the Vaughn case would not be affected. "The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its opera-

tion, and the effect is not that the former decision is bad law, but that it never was the law. To this the courts have established the exception that where a constitutional or statute law has received a given construction by the courts of last resort, and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated nor vested rights acquired under them impaired by a change of construction made by a subsequent decision. . . . The true rule in such cases is held to be to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative repeal or amendment; that is to say, making it prospective but not retroactive." 7 R. C. L. 1010.

Section 157 of the Constitution plainly prohibits any indebtedness for any purpose beyond the revenues of the year, without a vote of the people. Section 158 places a limitation on the creation of indebtedness in the aggregate. The object of the first section was to protect the people from the improvidence of their officers, and of the second section to protect them from their own improvidence. Under the rule of Vaughn v. City of Corbin, followed in the majority opinion, the protection intended to be afforded by these two sections of the Constitution vanishes into thin air. A floating indebtedness in any amount may be created and then funded over a long period of years. Public officers desiring to curry favor with the public can levy a low rate of taxation and expend each year the full amount that could have been raised by the highest permitted rate, and not being required to carry, as debt to the next year, the debt created in the preceding year in excess of what is collected, they can, after a period of years, fund the debt thus accumulated and then renew the process, and so ad infinitum. Eventually the taxpayers will find themselves burdened with a huge bonded debt in the creation of which they had no voice The evils that will result are thus pictured in the opinion in McCrocklin v Nelson County Fiscal Court, supra:

> "If, however, in good faith, a county does, in anticipation of its proper revenue, create debts in excess of what it collects, this surplus debt must be carried as a debt to the next year, and succeeding years until paid, and must be taken account of as an

indebtedness of that year, and succeeding years, until paid in exactly the same manner as if the carried-over debt was created in the year to which it was carried. This is clearly the meaning of section 157, Constitution, and is so declared in Southern Bitulithic Co. v. De Treville et al. (156 Ky. 513, 161 S. W. 560) and County Board of Education v. Board of Trustees Hopkinsville Public School (154 Ky. 309, 157 S. W. 697), supra; nor has there been decided in this jurisdiction any case that will be found in conflict with these. It is also true that if a county has a surplus left at the end of any year, after paying all of its debts, it becomes in the next year an asset and may be counted as a part of the county's revenue of the next year.

"Under this constitutional rule there is no authority for fiscal courts to issue bonds payable in 2, 10, or 20 years, because a debt created in one year must be paid in that year, or if not, in the next year. Fiscal courts are not empowered to issue or sell bonds except in obedience to a vote of the people obtained in the manner provided by section 157, Constitution, or to fund outstanding debts by the issue or sale of bonds, without a vote by the people as provided by that section. The case of Bardstown & Louisville Turnpike Co. v. Nelson County (117 Ky. 674, 78 S. W. 851, 25 Ky. Law Rep. 1900), supra, in no sense supports defendants' contention that the fiscal court had the power to issue the bonds it sold Williams, to the extent, at least, of the $34,000 left of the indebtedness incurred by Nelson county in purchasing the turnpikes, for a reading of the opinion will show that this is a mistake. Indeed, the opinion holds to the contrary, for it expressly declares that the issue and sale of bonds by the county to meet or carry the indebtedness incurred in acquiring the turnpikes would not be authorized, in view of the defeat at the election of the proposition submitting that question to the vote of the people. To permit the fiscal court to issue bonds would be to substitute that court for the people and give the fiscal court authority that is confided to the people alone. The fiscal court has no more power to issue bonds in the manner here attempted than has the Legislature; and in Stanley v. Townsend, 170 Ky.

833, 186 S. W. 941, it was held that the Legislature was without such power. If a fiscal court may issue bonds to take care of a deficit in one year, it can do the same the next year and so on, as long as it may choose, without limit. The result would be that, in the course of a few years, counties would have large bonded debts, perhaps as much as $50,000 or $100,000 without the sanction of a vote of the people. It follows from what has been said that the fiscal court of Nelson county county was without authority to issue the $55,000 of bonds sold Williams. Section 1857, Kentucky Statutes, is practically obsolete. Being enacted in March, 1892, only six months after the present Constitution of the state was adopted, its only object was to permit counties to issue bonds to take care of floating debts created before the adoption of the Constitution. Section 1852 confers authority on the fiscal court now to issue bonds or refund a bonded debt voted by the people. The construction of the statute contended for by defendant's counsel would permit the fiscal court and not the people to create a bonded debt, in plain violation of the Constitution. If the sections of the statute, supra, were capable of any other construction, they would have to be held unconstitutional, because violative of section 157 of the Constitution.''

If this court continues to follow the rule announced in the Vaughn case, the taxpayers of municipalities will have no protection from the creation of bonded debts in huge amounts. As aptly expressed in appellees' brief: "Then there is no remedy against the rolling up of annual deficits into large debts to be later transmuted into securities payable perhaps a generation hence. Then, by their negligence or wilfulness in failing to live within their income, taxing bodies can do that which they can not openly do without the consent of those taxed. Then, our current expenditures—not cost of permanent improvements but of today's living—can by the few, be loaded on the backs of the children and the children's children of the many. Like the prophet, they will lament: 'Our fathers have sinned and are not; and we have borne their iniquities.' '' In the lament of another prophet, "The fathers have eaten sour grapes, and the children's teeth are set on edge.''

I am of the opinion that the judgment of the lower court should be affirmed. I am authorized to state that Chief Justice THOMAS and Judge DIETZMAN concur in this dissent.